IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

STEPHEN E.,[1]                                    Case No. 3:16-cv-00837-YY

                    Plaintiff,                    OPINION AND ORDER

        v.

COMMISIONER OF SOCIAL SECURITY
ADMINISTRATION,

                    Defendant.


 YOU, Magistrate Judge:

## INTRODUCTION

        Stephen E. ("plaintiff") seeks judicial review of the final decision by the Social Security

Commissioner ("Commissioner") denying his application for Disability Insurance Benefits

("DIB") under Title II of the Social Security Act ("SSA").  This court has jurisdiction to review

the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  All parties have consented to

allow a Magistrate Judge to enter final orders and judgment in this case in accordance with

FRCP 73 and 28 U.S.C. § 636(c).  For the reasons discussed below, the Commissioner's decision

is AFFIRMED.

///

///

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the non-governmental party in this case.

## ADMINISTRATIVE HISTORY

Plaintiff applied for DIB on October 18, 2012.  Tr. 16.  Plaintiff alleged a disability onset date of January 14, 2011.  *Id.*; Tr. 149.  Plaintiff's applications were denied initially and on reconsideration.  Tr. 16.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place before ALJ S. Andrew Grace on June 11, 2015.  *Id.*  Plaintiff was represented by counsel and testified, as did a vocational expert ("VE").  Tr. 37-60.  On July 24, 2015, ALJ Grace issued a decision finding plaintiff not disabled.  Tr. 16-29.  Plaintiff requested review from the Appeals Council and was subsequently denied.  Tr. 1-3.  Plaintiff then filed a complaint in this court.

## BACKGROUND

Born in 1951, plaintiff was 59 years old on the alleged disability onset date.  Tr. 28. Plaintiff alleges disability due to hypogonadism; osteoarthritis; neuropathy; hernia; carpal tunnel syndrome; GERD; sleep apnea; peripheral neuropathy; shortness of breath; "seborric" dermatitis; spondylolisthesis; and benign prosthetic hyperplasia.  Tr. 168.  Plaintiff completed college and obtained a master's degree in microbiology.  Tr. 39.  Plaintiff worked as a project manager and the vice-president of a risk management company.  Tr. 39-41.

## STANDARDS

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted).  The court must weigh "both the evidence that supports and detracts from the

[Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is

rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. *Howard v.*

*Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must

demonstrate an "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected . . . to last for a continuous

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether

a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502 and

404.920. First, the Commissioner considers whether a claimant is engaged in "substantial

gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, the claimant is not

disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe

impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §

404.1520(c). If the claimant does not have a severe impairment, he is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either

singly or in combination, meet or equal "one of a number of listed impairments that the

[Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*,

482 U.S. at 140-41; 20 C.F.R. § 404.1520(d). If so, the claimant is presumptively disabled; if

not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner.

At step five, the Commissioner must demonstrate that the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S FINDINGS

At step one, the ALJ found that plaintiff had engaged in substantial gainful activity since the alleged onset date, January 14, 2011. Tr. 18. Plaintiff earned $13,432 performing contract work in the first quarter of 2013. Tr. 18. However, the ALJ noted that there were continuous 12-month periods during the adjudicatory period when plaintiff did not engage in substantial gainful activity. Tr. 18.

At step two, the ALJ determined plaintiff had the following severe impairments: major depressive disorder; anxiety disorder; sleep apnea; hip degenerative joint disease; knee osteoarthritis; degenerative disc disease; hernia status post repair; neuropathy; cardiomyopathy; and atrial fibrillation. *Id*. The ALJ found that plaintiff's GERD did not rise to the level of a severe impairment. Tr. 18-19.

At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 19-21. Because plaintiff did not establish disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work during the relevant period. The ALJ found that plaintiff had the residual functional capacity ("RFC") to perform sedentary work except:

[H]e should never climb ladders, ropes, or scaffolds or crawl. He can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. He should avoid concentrated exposure to extreme temperatures, vibrations, pulmonary irritants, and hazards. He is limited to unskilled and semi-skilled work.

Tr. 21.

At step four, the ALJ found that plaintiff was unable to perform his past relevant work. Tr. 27.

At step five, based on the testimony of the VE and other evidence, the ALJ determined that plaintiff could perform other work existing in significant numbers in the national economy despite his impairments, including collections/loan application clerk and computation clerk. Tr. 28. Accordingly, the ALJ concluded that plaintiff was not disabled under the Act. Tr. 29.

## DISCUSSION

As a preliminary matter, plaintiff begins his opening brief seeking to amend his disability onset date to January 22, 2014. The court cannot consider plaintiff's request, as its review is restricted to the Commissioner's final decision, which used a disability onset date of January 14, 2011. *See Klemm v. Astrue*, 543 F.3d 1139, 1144 (9th Cir. 2008) ("[t]he Social Security Act grants to district courts jurisdiction to review only 'final decisions' of the Commissioner"). Therefore, plaintiff's disability onset date remains January 14, 2011.

Plaintiff alleges the ALJ erred by improperly assessing: (1) subjective symptom testimony; (2) mental impairments under the RFC; (3) carpal tunnel syndrome at step two; and (4) ability to work at step five. Each of these arguments is discussed in turn below.

## I.     Subjective Symptom Testimony

In evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms, a two-step process is employed. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective

medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*)).  When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281).  It is "not sufficient for the ALJ to make only general findings; [the ALJ] must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345–46).

The ALJ's credibility decision may be upheld overall even if all of the ALJ's reasons for rejecting the claimant's testimony are not upheld.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).  Otherwise stated, an invalid reason is harmless error and does not negate the validity of the ALJ's ultimate conclusion about the claimant's testimony.  *Id.*  The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Here, the ALJ rejected plaintiff's subjective symptom testimony, in part, because plaintiff stopped working for reasons other than his impairments. Tr. 27. Plaintiff was laid off on January 14, 2011, contemporaneous with his alleged disability onset date of January 14, 2011. Tr. 16, 40, 183. Plaintiff testified that he was laid off because his employer "discontinued the portion of the business that [he] was heading" as vice-president and the company did not retain a place for him. Tr. 41. This constitutes a sufficient basis to reject plaintiff's subjective symptom testimony. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (an ALJ may discredit a plaintiff's subjective symptom testimony where the plaintiff ceased working for reasons other than his impairments).

The ALJ also rejected plaintiff's subjective symptom testimony because he worked at the level of substantial gainful activity in 2013, two years after his alleged disability onset date of January 14, 2011. Tr. 18, 27. In the first quarter of 2013, plaintiff worked as a project manager and earned $13,432.[2] Tr. 18. It was a contract position that was expected to last six to 12 months; however, after working for two months, plaintiff took two weeks off to have gallbladder surgery—a condition unrelated to the impairments the ALJ found severe at step two. Tr. 39. During plaintiff's absence, his responsibilities were transferred to a different office, and his contract was terminated. Tr. 39. The ALJ concluded that this contract work "indicates greater abilities than alleged." Tr. 27. An ALJ may consider inconsistent statements when evaluating a plaintiff's subjective symptom testimony. *Smolen*, 80 F.3d at 1284. The ALJ therefore did not err in rejecting plaintiff's subjective symptom testimony for this reason.[3]

---

[2] Plaintiff's Work History Report also indicates that he worked as a contractor after his onset date. Between January 14, 2011, and June 30, 2012, he "served as an expert witness and/or negotiator in legal disputes and mediations regarding lease and loan contracts" and made $36,000 a year. Tr. 184. The ALJ does not mention this work in his opinion.
[3] Although plaintiff stated the job was "physically difficult" and he took it "out of desperation more than anything else," it was reasonable to conclude that plaintiff would have continued

Furthermore, the ALJ noted that plaintiff "continues to search for work." Tr 27. Plaintiff reported spending two or three hours a day on the computer and telephone looking for jobs and sending out resumes. Tr. 20, 524. He spent a "lot of time on the computer checking for jobs, as well as trading stocks." Tr. 488. At the hearing, plaintiff testified that he continued to look for work and formed several businesses, but they "just failed to get off the ground" and "never went anywhere." Tr. 41. The ALJ did not err by relying on these facts to discredit plaintiff's testimony. "[T]he ability to work while allegedly disabled is a clear and convincing reason to find claimant less credible." *Ramirez v. Colvin*, 2014 WL 1716087, at *5 (C.D. Cal. Apr. 29, 2014) (citing *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988) (affirming the ALJ's adverse credibility finding due, in part, to claimant's holding himself out as available to work)); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (upholding credibility findings where plaintiff sought out other employment); *Chesler v. Colvin*, 649 Fed. Appx. 631, 632 (9th Cir. 2016) (cited pursuant to 9th Cir. R. 36–3) (holding ALJ did not err in contrasting the plaintiff's subjective symptom testimony with his "continual search for work").[4]

The ALJ also discounted plaintiff's subjective symptom testimony because it was not consistent with his physical activities. Tr. 24. Plaintiff alleged that his impairments affected his ability to bend, stand, walk, or sit. Tr. 192. He complained of painful walking, sitting, kneeling, and stair climbing. *Id.* He claimed that he could not lift much more than 10 pounds and could not walk for more than a quarter of a mile before stopping and resting. *Id.* He further alleged that hip, back, and knee pain prevented him from standing in one place or sitting "for any length

_____

working if the position had remained viable. In fact, plaintiff believed he was "doing a good job for them" and testified that his contract was terminated only because his responsibilities were moved to another office. Tr. 40.

[4] Plaintiff did tell his therapist that he was "[a]fraid if he got a job, he could not do it." Tr. 508. However, being afraid is distinguishable from being unable; therefore, this does not undermine the ALJ's decision.

of time." Tr. 187, 189. The ALJ noted, however, that "[d]espite knee pain, [plaintiff] continues to exercise." Tr. 24. The ALJ also observed that plaintiff "played racquetball until recently," rides a recumbent bicycle, and walks his dogs. *Id.*

The record supports the ALJ's conclusion. In September 2011, plaintiff reported to his physician, Dr. Walter Buhl, that he could exercise for an hour, although he had to stop and catch his breath at times. Tr. 390. In December 2013, plaintiff was examined by Dr. Gene Paek in conjunction with his claim for benefits. Dr. Paek noted that plaintiff "has been an active person all of his life, that he "continues to be active," and that he "occasionally exercises at the health club and bikes about 20 minutes on his recumbent bike at home." Tr. 488. Plaintiff reported to Dr. Paek that he sat for about 30 minutes at a time and, in total, sat for about 2-3 hours per day, checking for jobs and trading stocks. Tr. 488. Dr. Paek observed that plaintiff sat comfortably and was easily able to transfer from the chair to the examining table. Tr. 488. Dr. Paek concluded that plaintiff was able to stand and walk for up to six hours and sit for up to six hours; his maximum lifting and carrying capacity was 50 pounds occasionally and 25 pounds frequently; and he was limited on climbing, stooping, kneeling , crouching, or crawling, but had no limitations on reaching, handling, fingering, or feeling. Tr. 491.

Treatment records throughout 2014 and 2015 indicate that plaintiff had "good exercise habits," continued to play handball/racquetball two or three times per week, and had no mental or physical disability. Tr. 494 (January 22, 2014), 500 (January 15, 2014), 553 (April 2015), 561 (March 2015), 564 (November 2014), 566 (October 2014), 572 (August 2014), 582 (March 2014). In March 2014, plaintiff's physician, Dr. Buhl, opined that plaintiff could sit for two hours at a time and a maximum of eight hours a day; stand and/or walk for one hour in an eight-hour day, and one hour at a time; and never climb, balance, stoop, bend, crouch, or crawl. Tr.

506. In November 2014, plaintiff's cardiologist noted that plaintiff "exercises fairly actively," playing handball and riding a bicycle. Tr. 537.

In January 2015, only five months before the hearing, plaintiff's cardiologist noted that he was still "exercising and maintaining physical activity" and exercising "regularly." Tr. 534-35. In February 2015, plaintiff reported that he typically arose at 6 a.m. and took his dogs to the park. Tr. 524. At his hearing in June 2015, plaintiff testified that he rode a recumbent bicycle, despite testifying to hip and lower back pain while sitting. Tr. 47. While plaintiff had greatly reduced his racquetball playing at the time of the hearing, the overall record is incompatible with claims of back, knee, and hip pain of such severity that plaintiff could not sit or stand in one place "for any length of time." Tr. 187, 189.

Plaintiff puts forth several arguments to refute the ALJ's interpretation of the record. First, plaintiff argues that the ALJ relied upon some of his activities of daily living to undermine his complaints generally, but did not "identify which activity he was using to undermine which complaint." Pl.'s Br. 15. However, the ALJ's decision focused on plaintiff's exercise activities, noting specifically that he walked his dogs, used a recumbent bicycle, and played handball. Tr. 24. The ALJ also noted that plaintiff continued to exercise despite allegedly disabling knee pain. *Id*. The ALJ did not err in contrasting plaintiff's physical complaints with his exercise level.

Next, plaintiff argues that, while an ALJ "may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of [his] day performing household chores or other activities that are transferable to a work setting," the ALJ failed to make such findings. Pl.'s Br. 15 (citing *Smolen*, 80 F.3d at 1284 n.7). However, that is only one path an ALJ may take to find a plaintiff's activities of daily living merit a non-disability decision. Activities of daily living can support an ALJ's adverse finding regarding subjective symptom testimony if the activities of

daily living "meet the threshold for transferable work skills" *or* if there are contradictions in the testimony. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ chose the latter path, and did not err in doing so.

Plaintiff also argues the ALJ erred by ignoring his unrefuted testimony regarding the extent to which he plays handball and the "obliteration" of his right knee joint. Pl.'s Br. 16. Plaintiff testified that, in the months leading up to the hearing, he decreased his handball playing due to his impairments. Tr. 47-48. He said that he rarely played, and when he did it was with a partner. Tr. 48. He did not exert himself on the court, and would only hit the ball if it came to him. Tr. 48.

The ALJ acknowledged in his opinion that plaintiff "played [handball] until recently." Tr. 24. However, the ALJ also noted that "despite knee pain, [plaintiff] continues to exercise." *Id.* Moreover, even playing handball in the limited manner described by plaintiff is incompatible with plaintiff's subjective symptom testimony that he could not stand in place "for any length of time," including the time it took to prepare a meal. Tr. 189. Because the ALJ's interpretation of the record was reasonable, it must be upheld. *See Batson*, 359 F.3d at 1193 (holding that if the ALJ's interpretation of the record is reasonable, it must be upheld).

The bulk of plaintiff's remaining arguments focus on the ALJ's discussion of the medical evidence, which includes a lengthy summary of the medical record. The ALJ stated that, because the "medical records do not fully support the severity of [plaintiff's] allegations," he considered plaintiff's claims "with caution." Tr. 27. After synopsizing plaintiff's medical records, the ALJ concluded that the "objective findings support some degree of functional limitation caused by physical and mental conditions." However, the ALJ found that "[a]lthough the claimant has a number of pain complaints, such as back pain, hip pain, and right knee pain,

there is limited treatment for these issues in the record." Tr. 24. Specifically, the ALJ pointed to "office visits with routine care." Tr. 24. He also pointed to plaintiff's hip x-ray, which "showed very minimal changes." Tr. 24.

Plaintiff contends that the ALJ's credibility analysis "fails for lack of adequate specificity." Pl.'s Br. 14. Specifically, he contends that the ALJ may not "simply state[] her non-credibility conclusion and then summarize[] the medical evidence supporting her RFC determination." Whether that is correct or not, this court does not rely on these reasons in reaching its ultimate conclusion as to the ALJ's determination of plaintiff's subjective symptom testimony because there are other reasons that support the ALJ's decision in that regard. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (the ALJ's overall subjective symptom assessment may be upheld if the ALJ gave legally sufficient reasons for discounting plaintiff's subjective symptom testimony, even if some reasons were legally insufficient).

## II.     Mental Impairments and the RFC

The RFC is the most a claimant can do despite the claimant's physical and mental impairments. 20 C.F.R. § 404.1545. The Commissioner, however, uses the special psychiatric review technique to evaluate mental impairments at steps two and three of the sequential process with respect to activities of daily living, social functioning, concentration, persistence, or pace, and episodes of decompensation of extended duration. 20 C.F.R. § 404.1520a(c). While the results of the special psychiatric review technique are distinct from the RFC assessment, a doctor may translate the psychiatric review technique findings into concrete workplace limitations, which the ALJ may adopt into the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174-75 (9th Cir. 2008).

Here, Dr. Donna Wicher, Ph.D. completed a psychological examination of plaintiff in February 2015, and diagnosed him with major depressive disorder and unspecified anxiety disorder. Tr. 525. She utilized the psychiatric review technique and opined that plaintiff had mild to moderate deficits with activities of daily living and social functioning, and moderate deficits in concentration, persistence, and pace, with no episodes of psychological decompensation. Tr. 525. The ALJ gave Dr. Wicher's opinion partial weight, but gave full weight to her assessment regarding plaintiff's moderate deficits in concentration, persistence, and pace. Tr. 26. In explaining her opinion that plaintiff had moderate deficits in concentration, persistence, and pace, Dr. Wicher explicitly opined that despite his mental limitations, plaintiff's ability to understand and remember simple instructions; carry out simple instructions; make judgments on simple work-related decisions; understand and remember complex instructions; and make judgments on complex work-related decisions, were unaffected by his impairments. Tr. 526. Dr. Wicher further assessed a mild impairment in plaintiff's ability to respond appropriately to usual work situations and to changes in a routine work setting.[5] Tr. 527. The ALJ accounted for these restrictions by limiting plaintiff to semi-skilled and unskilled work. Tr. 26.

Plaintiff contends that the ALJ erred by failing to include his mental impairments in the RFC. Pl.'s Br. 12. First, plaintiff asserts that rather than incorporating Dr. Wicher's assessed moderate deficits in concentration, persistence, and pace in the RFC, the ALJ silently rejected them. *Id.* Dr. Wicher assigned mild to moderate limitations using the categories provided by the psychiatric review technique, and also translated those limitations into concrete restrictions for the RFC. Tr. 525-27; *see Stubbs-Danielson*, 539 F.3d at 1174-75 (the ALJ may rely on a doctor

---

[5] A "mild" impairment is defined as "a slight limitation in this area, but the individual can generally function well." Tr. 526.

to translate the psychiatric review technique findings into concrete workplace restrictions suitable for the RFC). Dr. Wicher's concrete restrictions were arguably mild, as she opined that plaintiff was virtually unrestricted in his ability to understand, remember, and carry out instructions, and only mildly impaired in responding appropriately to workplace settings. Tr. 526-27. While the ALJ noted in his opinion that Dr. Wicher's assessed moderate deficits in concentration, persistence, and pace, as the RFC reflects, he also accepted Dr. Wicher's specific assessments as to how those moderate deficits affected plaintiff's ability to perform work-related activities. As such, plaintiff has not demonstrated that the ALJ failed to incorporate Dr. Wicher's restrictions into the RFC.

Second, plaintiff argues that the ALJ failed to include any limitations in concentration, persistence, or pace in hypotheticals posed to the VE at the administrative hearing. Pl.'s Br. 12. Plaintiff argues "the ALJ assumed the role of [the] VE in determining the impact of the moderate limitation in concentration, persistence, and pace rather than allowing the VE to assess it." Pl.'s Br. 12. A hypothetical question to the VE must include all limitations supported by substantial evidence and accepted by the ALJ through the RFC. *Cooper v. Sullivan*, 880 F.2d 1152, 1158 n. 13 (9th Cir. 1989). Here, the ALJ did not need to include any hypothetical limitations associated with Dr. Wicher's opinion because the doctor ultimately assessed virtually non-existent limitations, as discussed above. Because no functional restrictions were left out by the ALJ's hypothetical, there is no error. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001) ("An ALJ is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence").

///

///

### III.    Carpal Tunnel Syndrome at Step Two

At step two, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments.  Step-two findings must be based upon medical evidence.  20 CFR §§ 404.1520(a), 416.920(a).  An impairment is "not severe" if it "does not significantly limit [the claimant's] ability to do basic work activities."  *Id*.  The ALJ may draw inferences about the severity of an impairment based on the degree of treatment the claimant sought.  *Flaten v. Sec'y of Health & Hum. Servs.*, 44 F.3d 1453, 1464 (9th Cir. 1995).

Plaintiff argues the ALJ erred by failing to analyze carpal tunnel syndrome as a severe impairment at step two.  Plaintiff argues the record is "replete with references to carpal tunnel syndrome," and objective testing demonstrated functional limitations to plaintiff's hands as a result of carpal tunnel syndrome.  Tr. 244, 246, 248, 250, 254, 256, 261, 276.  Plaintiff also reported that carpal tunnel syndrome hindered his ability to write or type.  Tr. 187.

The ALJ, however, decided step two in plaintiff's favor, meaning that any error at step two is harmless and cannot be the basis for remand.  *See Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) (if step two was decided in plaintiff's favor, any step two error is harmless).  The court, therefore, construes plaintiff as arguing that the ALJ erred by failing to include limitations related to carpal tunnel syndrome in the RFC.  *See id.* (when assessing a plaintiff's RFC, the ALJ must include limitations imposed by all impairments, even those considered non-severe).

Notably, the records that plaintiff cites are from 2010 and precede his disability onset date of January 14, 2011.  Pl.'s Br. 17 (citing Tr. 244, 246, 248, 250, 254, 256, 261).  Medical evidence preceding a plaintiff's disability onset date is of limited relevance.  *See Carmickle*, 533 F.3d 1165 (ALJ did not err in giving little weight to doctor's opinion where it was provided

before plaintiff's alleged onset of disability). Moreover, although plaintiff was diagnosed with carpal tunnel syndrome based on positive Tinel's sign and Phalen's maneuver, the record is silent as to any treatment. The lack of treatment suggests that plaintiff's carpal tunnel did not unduly affect his functionality. Finally, in March, 2013, Dr. Paek examined plaintiff to determine the extent of his physical impairments. Tr. 487-91. Plaintiff's gross and fine motor skills were fully functional based on objective and subjective findings, and Dr. Paek assigned no workplace restrictions on reaching, handling, fingering, or feeling. Tr. 491.

While the ALJ did not expressly connect Dr. Paek's findings to a discussion of plaintiff's carpal tunnel syndrome, the ALJ's overall decision demonstrates that he considered the non-severe impairment, but appropriately declined to include restrictions related to carpal tunnel syndrome in the RFC. *See Alaska Dep't. of Envtl. Conserv. v. EPA*, 540 U.S. 461, 497 (2004) ("[e]ven when an agency explains its decision with 'less than ideal clarity,' a reviewing court will not upset the decision on that account 'if the agency's path may reasonably be discerned'"). The ALJ acknowledged plaintiff's carpal tunnel syndrome, noting that plaintiff alleged an inability to work due to pain while writing or typing. Tr. 22. The ALJ subsequently gave a detailed summation of Dr. Paek's findings, including plaintiff's ability to "grasp and manipulate both large and small objects," his normal fingertip sensation, and no diminution of function with repetition. Tr. 23. Therefore, the sequence of the ALJ's analysis demonstrates that he considered plaintiff's carpal tunnel syndrome in connection with the RFC. Moreover, the ALJ did not err by declining to include restrictions related to carpal tunnel syndrome in the RFC, as the record shows full hand functionality in March 2013 and a lack of treatment related to plaintiff's hands.

///

**IV.    Step Five**

At step five, the burden shifts to the Commissioner to "show that, taking into account a claimant's age, education, and vocational background, [he] can perform any substantial gainful work in the national economy." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001); 20 C.F.R. § 404.1520(f).  "There are two ways for the Commissioner to meet his Step Five burden: (1) the testimony of a VE; or (2) by reference to the Medical—Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Osenbrock*, 240 F.3d at 1162, (citing *Tackett v. Apfel*, 180 F.3d 1094, 1100–01 (9th Cir.1999)).

**A.    The Dictionary of Occupational Titles**

Plaintiff argues the ALJ erred by using the wrong codes to identify jobs he could perform, yet "failed to explain this divergence." Pl.'s Br. 8.  The ALJ asked the VE if a hypothetical person with plaintiff's age, education, past relevant work experience, and residual functional capacity, with the same skills plaintiff acquired in his past relevant work, could perform jobs in the national economy.  Tr. 52-54.  The VE identified "sedentary collection clerk," Dictionary of Occupational Titles ("DOT") 203.362-010, and "in the loan application field," sedentary, semi-skilled clerical computation clerk, DOT 205.367-010.  Tr. 55.  The ALJ adopted the VE's recommendation.  Tr. 28.

DOT 203.362.010 is actually the code for clerk-typist.  The correct code for the collection clerk position is DOT 241.357-010.  Nevertheless, this error was obviously a misstatement and harmless.  *See Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (an error is harmless when it does not affect the ultimate non-disability decision).  The description of the collection clerk position in DOT 241.357-010 contains work activities related to finance and debt collection, and closely matches the VE's testimony about plaintiff's

past management experience "in the lending, leasing, [and] finance area." Tr. 55. Additionally, the ALJ identified the collections/loan application clerk position as having a specific vocational preparation ("SVP") of 4, which is consistent with the DOT's description of a collection clerk, but inconsistent with the DOT's description of a clerk typist. Tr. 28. Therefore, it is clear that although the ALJ and VE misidentified the DOT code, they were referring to the position of collection clerk.

The ALJ also made a clerical error in identifying the computation clerk position. The VE identified the computation clerk position using the correct DOT code, 205.367-022. Tr. 55. However, ALJ used the wrong last two digits, transcribing the DOT code as 205.367-010. Tr. 28. The ALJ's error is obviously clerical, as the VE's description of the computation clerk position matches the DOT description.

### B.     Transferable Skills

The VE opined that plaintiff acquired skills in "office and business procedures, use of office equipment, [and] knowledge of finance, leasing, and collection activities," and the ALJ adopted the VE's opinion. Tr. 28-29, 55-56. The ALJ then determined that plaintiff's transferable skills allowed him to work as a collections/loan application clerk or computation clerk. Tr. 28.

Plaintiff argues the ALJ erroneously failed to address the factors set forth in SSR 82-41. Pl.'s Br. 6. Plaintiff relies on the following passage from SSR 82-41:

> Where transferability is at issue, it is most probable and meaningful among jobs in which: (1) the same or a lesser degree of skill is required, because people are not expected to do more complex jobs than they have actually performed (i.e., from a skilled to a semiskilled or another skilled job, or from one semiskilled to another semiskilled job); (2) the same or similar tools and machines are used; and (3) the same or similar raw materials, products, processes or services are involved.

*Id.*

The quoted passage does not stand for the proposition that an ALJ must *discuss* the foregoing factors in his opinion. Rather, the ALJ's analysis of a plaintiff's transferable skills must *comport* with the foregoing factors. Here, the ALJ's analysis satisfies the factors outlined in SSR 82-41:

(1) Plaintiff's previous work was classified as skilled, with an SVP of 8, and the ALJ determined plaintiff could perform semi-skilled jobs with an SVP of 4. Thus, the jobs identified by the ALJ require a lesser degree of skill than plaintiff's previous work.

(2) The jobs identified by the ALJ use tools similar to plaintiff's previous work, as they involve work at a financial services or collections company, and plaintiff's previous employers were a risk management company and credit card company.

(3) The same services are involved, as plaintiff would work with collections and financial processes or services, like his previous job.

Plaintiff argues that the ALJ failed to adequately identify his transferable skills. Specifically, plaintiff posits that the VE's testimony that he had prior skills in "office and business procedures, use of office equipment, [and] knowledge of finance, leasing, and collections activities" is vague and unspecified, and they therefore do not constitute transferable skills under SSR 82-41. Pl.'s Br. 6-7; Tr. 55-56. The Commissioner responds that plaintiff's counsel did not raise this issue at the hearing and plaintiff therefore failed to preserve this challenge. Def.'s Br. 17. The Commissioner cites *Shaibi v. Berryhill*, 883 F.3d 1102, 1104 (9th Cir. 2017), in support. In *Shaibi*, the plaintiff appeared at the administrative hearing and gave testimony, as did a VE. The VE testified that the plaintiff could perform jobs existing in significant numbers in the national economy, and opined as to the specific number of jobs available nationwide. *Id.* The

plaintiff's counsel cross-examined the VE but did not question his opinion about the number of jobs in the national or local economy, nor did counsel question how the VE arrived at those numbers. *Id.* On appeal to the district court, the plaintiff disputed the VE's job estimates for the first time, arguing that the ALJ should have checked various sources to determine the accuracy of the VE's estimates. *Id.* at 1108. The Ninth Circuit held that "when a claimant fails entirely to challenge a vocational expert's job numbers during administrative proceedings before the agency, the claimant forfeits such a challenge on appeal, at least when that claimant is represented by counsel." *Id.* at 1109. The court found that the decision in *Meanel v. Apfel*, 172 F.3d 1111 (9th Cir. 1999), compelled its holding: *Meanel* holds that "when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Id.* at 1115.

Here, plaintiff was represented by counsel throughout the hearing, yet counsel declined to question the VE or contest his testimony regarding plaintiff's transferable skills. Tr. 34-59. The VE testified that plaintiff acquired skills at his past work, such as "office and business procedures, use of office equipment and then the knowledge of finance, leasing and collections activities." Tr. 55-56. If plaintiff believed the VE erred, counsel should have raised the issue while the VE was testifying so he could explain his testimony with greater specificity. Having failed to do so, plaintiff's argument is foreclosed by *Meanel* and *Shaibi*.

Plaintiff argues that the Supreme Court's post-*Meanel* holding in *Sims v. Apfel*, 530 U.S. 103, 112 (2000), must be given controlling weight. However, the Ninth Circuit rejected this argument in *Shaibi*. *Sims* stands for the proposition that "[c]laimants who

exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues." *Shaibi*, 883 F.3d at 1109 (quoting *Sims*, 530 U.S. at 112). The Supreme Court specifically noted that its holding only encompassed whether a plaintiff was required to raise the issue at the Appeals Council level, and did not affect "[w]hether a claimant must exhaust issues before the ALJ." *Id.* (quoting *Sims*, 530 U.S. at 107).

Plaintiff argues counsel could hardly be expected to raise legal issues at the administrative hearing, given the ALJ had not yet incorporated the VE's testimony into an opinion. *Shaibi*, again, dispenses with that argument: the Ninth Circuit "did not suggest that a claimant must, within minutes of a VE's initial testimony, cross-examine a VE with specific alternative job calculations based on . . . published sources. It is enough to raise the job-numbers issue in a general sense before the ALJ." *Id.* at 1110. Here, plaintiff's counsel did not raise the issue of transferable skills before the ALJ or VE, even in a general sense. Tr. 58-59. Plaintiff has thus waived the issue of transferable skills.

### C.    Vocational Adjustment

"In order to find transferability of skills to skilled sedentary work for individuals who are of advanced age (55 and over), there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry." 20 C.F.R. pt. 404, subpt. P, app. 2 § 201.00(f). A claimant is disabled if he must undergo a period of vocational adjustment beyond "very little." *Id.*

Here, plaintiff is of advanced age, as he was born in 1951. Tr. 149. At the administrative hearing, the ALJ recognized that the regulations required him to consider whether "there must be little, if any, vocational adjustment in terms of tools, work processes, work settings or the

industry" for the jobs identified by the VE that plaintiff could perform. Tr. 55. The VE testified that plaintiff could perform the jobs of collection clerk and computation clerk because they required very little, if any, vocational adjustment. Tr. 55. The VE stated the jobs were "still involved in the lending, leasing, finance area where the skills come from initially with the management work." Tr. 55. In his decision, the ALJ noted that "[t]he vocational expert testified the claimant's previous work is so similar to the jobs recited above that the claimant would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings or the industry." Tr. 29.

Plaintiff argues the ALJ's opinion is devoid of analysis supporting the proposition that plaintiff required very little vocational adjustment, citing SSR 82-41 and *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009). Neither supports plaintiff's position, however. SSR 82-41 merely reiterates that to make a finding of non-disability, an ALJ must determine that a claimant would need "very little, if any, vocational adjustment required in terms of tools, work processes, work settings or the industry." The SSR does not require any level of analysis. Here, the ALJ cited specifically to the VE's testimony, which was couched in the language of SSR 82-41: "[P]laintiff required very little, if any, vocational adjustment." Tr. 55.

Moreover, *Bray* is distinguishable. In *Bray*, the ALJ found the plaintiff had "previous skilled work experience," but made no specific findings about transferable skills. 554 F.3d at 1223. Furthermore, neither the ALJ nor the VE addressed whether the plaintiff "would have to undergo more than minimal 'vocational adjustment' to perform successfully the tasks" required of the VE's suggested jobs. *Id.* at 1224. Thus, in *Bray*, the ALJ's opinion and the VE's testimony completely omitted any discussion of vocational adjustments. Here, on the other hand, both the ALJ and the VE addressed vocational adjustments.

**ORDER**

Based on the foregoing, the Commissioner's decision denying plaintiff's application for

DIB is AFFIRMED.

DATED this 16th day of July, 2018.

/s/ Youlee Yim You
_____
Youlee Yim You
United States Magistrate Judge